## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAY BOYER, JR.,** | : | |
| | : | **Civil No. 1:08-CV-1079** |
| **Petitioner** | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **RANDALL BRITTON,** | : | |
| | : | |
| **Superintendent** | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

In the instant habeas corpus petition we are presented with an unusual circumstance: In the context of two state prosecutions of Jay Boyer, the Pennsylvania courts have twice examined the petitioner's conviction and the admission of a statement allegedly made by the petitioner in violation of his Miranda rights.  In one instance, the Pennsylvania courts found that the circumstances surrounding this interrogation compelled a new trial.  In the second instance, the Pennsylvania courts upheld Boyer's conviction and sentence of an aggregate term of imprisonment of 19 years to 55 years in a state correctional facility.  Invited by this Court to reconcile these seemingly contradictory outcomes, the state courts have declined to further address the merits of Boyer's claims.  Therefore, it falls to this Court to reconcile

these seemingly irreconcilable outcomes.  Having undertaken this task, for the

reasons set forth below, we conclude that the Pennsylvania courts that addressed this

Miranda issue on its merits in Boyer's companion case correctly concluded that a

remand of this case for further proceedings was necessary.  Therefore, consistent with

the findings of the Pennsylvania courts that have examined the merits of this issue,

for the reasons set forth below, we recommend that this petition for writ of habeas

corpus be granted.

## II.   Statement of Facts and of The Case

### A.   Boyer's Northumberland County Prosecution

The petitioner, Jay Boyer, was convicted in two adjoining rural Pennsylvania

counties, Northumberland and Union County, for his role in a home invasion on

October 5, 2001, during which a husband and wife were brutally assaulted before the

assailants robbed them of a safe containing a quantity of rare coins.  For his alleged

role in the robbery, petitioner was charged in a ten count information in the

Northumberland County Court of Common Pleas with robbery, conspiracy to commit

robbery, aggravated assault, burglary, conspiracy to commit burglary, theft by

unlawful taking, terroristic threats, and criminal mischief.

Prior to trial commencing in his Northumberland County criminal case, Boyer's

lawyer filed a motion to suppress a confession that petitioner purportedly made while

he was in the custody of the Pennsylvania State Police.  (Doc. 21, Ex. A.)  In this motion, counsel argued that Mr. Boyer's confession should have been suppressed because it was involuntary.  Notably, the motion did not raise, and Boyer's state defense counsel did not litigate, any separate claim that this statement was obtained from Boyer in violation of his <u>Miranda</u> rights since police may not have scrupulously honored Boyer's apparent invocation of his right to counsel, a threshold duty imposed upon law enforcement by the Supreme Court's <u>Miranda</u> decision.  The failure to raise this issue was an oversight by defense counsel, an attorney who was new to the practice of law; as counsel later acknowledged:  he "did not think of that [the <u>Miranda</u> claim] at that time."  (Doc. 54, p. 18.)

This oversight, in turn, distorted the prism of the court's perspective in this case.  Thus, the trial court denied Boyer's motion to suppress in a ruling which did not analyze this threshold requirement under <u>Miranda</u> that police scrupulously honor an invocation of counsel.  (Doc. 58-4.)  Instead, the court's opinion focused on the voluntariness of this statement, and considered the issue of whether Boyer's subsequently waived counsel during his second police interrogation.  Following a trial which began and ended on May 14, 2003, petitioner was convicted and sentenced to an aggregate term of imprisonment of 19 years to 55 years in a state

correctional facility.[1]

Plaintiff's trial counsel filed a timely direct appeal on his behalf to the Pennsylvania Superior Court. On June 9, 2004, the Superior Court affirmed the trial court in a non-precedential opinion. (Doc. 58-4) Mr. Boyer did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On January 4, 2005, Boyer, at this time represented by different counsel, filed a petition for post-conviction collateral relief under Pennsylvania's post-conviction relief act ("PCRA"). (Doc. 21, Ex. F.) The trial court held a hearing on the petition on April 12, 2005, and entered an order denying the petition on April 11, 2006. (Doc. 58-4, Ex. F.) That opinion disposed of ineffectiveness claims relating to this <u>Miranda</u> issue in a summary fashion, stating generally that this issue had been previously

---

[1] This sentence was ordered to run consecutively with a sentence imposed in an unrelated companion case that was tried in Union County, Pennsylvania. In that case, Mr. Boyer was sentenced to 28 years to 104 years, although the sentencing judge later reduced the sentence to a term between 26 years and 100 years. On December 10, 2008, the Pennsylvania Superior Court vacated the conviction and sentence in this companion case, and remanded to the Court of Common Pleas for a new suppression hearing after finding that Mr. Boyer's <u>Miranda</u> rights may have been violated in connection with a confession that he purportedly made to state police officers. Notably, this confession, which the Superior Court found may have been obtained in violation of <u>Miranda</u>, forms the principal basis for the relief that Petitioner seeks before this Court. See Commonwealth v. Boyer, 523 MDA 2008 (Pa. Super. Ct. Dec. 10, 2008) (Doc. 21, Ex. C.) We were informed by counsel that following remand the Union county case was resolved through a negotiated guilty plea.

litigated without focusing on the fact that the threshold <u>Miranda</u> claim that police had failed to scrupulously honor his initial invocation of a right to remain silent had never been expressly addressed by the trial court.  (<u>Id</u>.)  Boyer filed a timely appeal of the unfavorable PCRA decision with the Pennsylvania Superior Court, which affirmed the denial of PCRA relief in a non-precedential decision entered on May 10, 2007.  (Doc. 58-4, Ex. G.)  That Superior Court decision also failed to address the merits of this specific Miranda claim, concluding instead that the trial court had found that this issue had been previously litigated.  (<u>Id</u>.)  On or about June 8, 2007, Boyer filed a petition for allowance of appeal with the Pennsylvania Supreme Court.  On December 3, 2007, the Pennsylvania Supreme Court denied allocatur.

### B.   **Boyer's Union County Litigation**

While this federal proceeding was pending, and while the parties were litigating whether Boyer's federal filing was barred by the statute of limitations, Boyer continued to actively litigate similar issues in state court involving his 2001 confession.   This litigation took place in the context of state post-conviction proceedings regarding Boyer's separate conviction in Union County for his role in this 2001 home invasion crime spree.

In the Union County litigation, Boyer's efforts yielded different, and significantly more favorable, results.  On December 10, 2008, the Pennsylvania

Superior Court vacated the Union County conviction and sentence in this companion case, and remanded to the Court of Common Pleas for a new suppression hearing after finding that Boyer's Miranda rights may have been violated in connection with a confession that he purportedly made to state police officers.   Notably, this confession, which the Superior Court found may have been obtained in violation of Miranda, also formed the principal basis for the habeas corpus relief that Petitioner sought before this Court.   See Commonwealth v. Boyer, 523 MDA 2008 (Pa. Super. Ct. Dec. 10, 2008) (Doc. 21, Ex. C.); Commonwealth v. Boyer, 962 A.2d 1213 (2008).

The Superior Court's precedential opinion provided the first detailed description of the circumstances surrounding this interrogation, a factual recital which is largely unchallenged in this federal habeas corpus proceeding.  According to the state court:

> ¶ 11 At some point before being arrested in the present case, [Boyer] was jailed with respect to a separate matter.  Pennsylvania State Trooper Reeves ("Trooper 1") suspected [Boyer]'s involvement in the case *sub judice* and, as such, arranged for another prisoner, who would act as an informant, to be assigned as [Boyer]'s cellmate.  Thereafter, [Boyer] made one or more inculpatory statements to the informant.  The informant then advised Trooper 1 regarding the information obtained from [Boyer].

> ¶ 12 [Boyer] was later arrested on the instant matter and was taken to a state police barracks for questioning by Trooper 1.  Trooper 1 gave

6

[Boyer] his <u>Miranda</u> warnings, and [Boyer] stated, "I don't want to talk to you." N.T., 06/20/02 at 23. Trooper 1 then ended the interview and left [Boyer] alone. At that time, State Trooper Watson ("Trooper 2") had just arrived at work. He asked Trooper 1 if he could "take a shot at interviewing [Boyer] ." N.T., 06/20/02, at 27. Trooper 2 then questioned [Boyer] without administering <u>Miranda</u> warnings. During that questioning, [Boyer] confessed to the charges for which he was eventually tried and convicted.

¶ 13 Before trial, [Boyer]'s counsel filed a motion seeking to suppress his statements to the informant and to Trooper 2. In that motion, [Boyer] complained his statements to the informant were obtained in violation of his constitutional rights, particularly his right to counsel. [Boyer] further alleged that Trooper 2 interviewed him, thereby obtaining statements from him, as a result of the constitutionally infirm statements police received from the informant. After an evidentiary hearing, the court denied the motion, finding [Boyer] had no right to counsel when he spoke to the informant.

¶ 14 In his PCRA petition, and on this appeal, [Boyer] contends his counsel was ineffective in failing to advance a <u>Miranda</u> theory to suppress his confession to Trooper 2. More specifically, [Boyer] maintains counsel should have argued it was a <u>Miranda</u> violation for Trooper 2 to interrogate him and thereby obtain the confession.

¶ 15 The PCRA court found [Boyer]'s aforesaid statement to Trooper 1 (*i.e.,* "I don't want to talk to you") was not an invocation of the right to remain silent but, rather, a declaration that Appellant would not talk specifically to Trooper 1 because of [Boyer]'s animosity toward him. Having found [Boyer] did not invoke his <u>Miranda</u> rights, the court reasoned there was no merit to the <u>Miranda</u> theory—that is, the theory that Trooper 2 should have administered <u>Miranda</u> rights and that [Boyer]'s confession was obtained in violation of those rights. Finding no merit to the <u>Miranda</u> theory, the court determined there was no arguable merit to the claim that counsel should have pursued that theory. As such, the court concluded counsel could not be found ineffective.

Com. v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1215-16 (Pa. Super. Ct. 2008).

On these facts, the Superior Court reversed the ruling of the state trial court in Union County, and granted post-conviction relief to Boyer, reasoning that Boyer was entitled:

> [T]o a new trial because he has shown by a preponderance of the evidence  that his conviction resulted from the ineffectiveness of his counsel. The particular ineffectiveness of which we speak is counsel's failure in not litigating the Miranda theory of suppression.  In reaching the determination of ineffectiveness, we necessarily determined, *inter alia,* that Appellant has shown there is arguable merit to the Miranda theory.  However, our determination that there is arguable merit to the claim that the confession could have been suppressed pursuant to Miranda if counsel had raised Miranda is not a determination that the Miranda theory must necessarily prevail if presented and litigated by [Boyer]'s counsel in an actual suppression hearing upon remand. Therefore, we are not ordering the suppression of [Boyer]'s confession.

> ¶ 29 Phrased differently, the parties did not litigate the Miranda issue in the suppression court.  Thus, for example, the Commonwealth cannot be said to have had a full opportunity to present evidence to the suppression court on the Miranda theory.  It is true that the original suppression hearing did reveal facts that happened to relate to Miranda. Indeed, [Boyer] has relied on those facts and we have found them sufficient to convince us by a preponderance that there is at least arguable merit to the claim that the confession should have been suppressed under a Miranda theory.  However, whether there might be new or additional facts elicited at a suppression hearing when Miranda is actually raised, we do not know.  Thus, whether the Miranda theory will ultimately prevail, if and when it is litigated fully via a suppression motion and hearing on remand, we also cannot know.

¶ 30 Consequently, our ruling today is not to be taken as a pronouncement that there necessarily was a <u>Miranda</u> violation and that the confession must necessarily be suppressed pursuant to <u>Miranda</u>. We do, however, find [Boyer] has convinced us that there is arguable merit to a <u>Miranda</u> claim based on the testimony as it now stands and that counsel was ineffective. [Boyer] is free to seek suppression of his confession pursuant to <u>Miranda</u> on remand.

<u>Commonwealth v. Boyer</u>, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008)

## C.   Federal Habeas Corpus Proceedings

It is against this procedural backdrop that, on June 5, 2008, following exhaustion of his PCRA petitions and appeals, Boyer filed, *pro se*, a petition for a writ of habeas corpus with this Court. (Doc. 1.) On October 30, 2008, counsel was appointed to represent Mr. Boyer in this federal habeas proceeding.[2] Boyer's petition, in part, argued that he had received ineffective assistance of counsel in his Northumberland County trial because his trial counsel, like the trial counsel in the Union County prosecution, had failed to litigation the patent <u>Miranda </u>claim in this case which arose as a result of the successive interrogations of Boyer immediately following his apparent invocation of his right to remain silent.

The respondent initially raised threshold procedural objections to this petition, alleging that Boyer filed this federal petition beyond period of the one year statute of

---

[2] Attorney Edward J. Rymsza, Esq., who had represented Boyer during his PCRA proceedings, was appointed as counsel in this habeas proceeding.

limitations prescribed for such petitions.  After full briefing of this issue by the parties we issued a Report and Recommendation which recommended that this statute of limitations defense be denied.  (Doc. 29.)  Citing the extraordinary posture of this case in state court, where state trial and appellate courts had apparently reached mutually inconsistent outcomes regarding the same confession, we recommended that the petition be treated as effectively unexhausted and referred to the state courts so those courts would have an opportunity to address this apparent inconsistency, and develop a factual record in the Northumberland county case.  (Id.)  The district court adopted this recommendation, and this matter was remanded to the state courts to allow for further exhaustion of these issues in state court.  (Doc. 30.)  While these state court proceedings were pending we then stayed further action on this federal petition. (Id.)

On February 1, 2013, the parties moved to re-open this federal petition, reciting that Boyer has further exhausted his state remedies, as we had directed, but that the state courts had declined to address the merits of his petition's Miranda claim, or reconcile the otherwise irreconcilable state court outcomes in these two companion cases. (Doc. 33.)  With this conflict unresolved by the state courts, the stay entered in this case was lifted and this matter was  referred to the undersigned for further proceedings. (Doc. 34.)

After granting the parties a number of continuances, a hearing was held on this petition on November 4, 2013.  (Doc. 49.)  At this hearing, Boyer's former state trial counsel in Northumberland County appeared and testified.   In candid, credible testimony counsel described his performance in this case in a manner which was strikingly similar to the Union County trial counsel practice which resulted in PCRA relief for Boyer in Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008).

According to Boyer's former trial counsel, he had accepted the appointment to represent Boyer at an early stage in his professional career, during his first year as court-appointed counsel.  (Doc. 54, p 19.)  In Boyer's case, counsel filed a motion to suppress Boyer's statement made to the state police, but only argued that the statement should be suppressed because it was involuntary. (Doc. 54, p.15).  Counsel never raised a Miranda challenge to this confession.  (Id.)  At the time that counsel engaged in this motions practice he recognized that this legal issue was an important question in Boyer's case because the confession was a highly damaging piece of evidence.  (Id., p 16.)  Nonetheless, like Boyer's trial counsel in the Union county case, court-appointed counsel in Northumberland county never litigated a Miranda challenge to this confession.  (Id.)  Moreover, Boyer's former state trial counsel candidly acknowledged that there were no tactical or strategic reasons for foregoing

this legal issue.  (Id.)  Instead, counsel forthrightly admitted that:  "At the time, I probably did not think of that [the Miranda claim] at that time.  This case was, actually I got it during the first year, within the first year of my employment with the county.  And to be honest with you, I didn't probably think of it at that time."  (Id., pp. 18-19.)

Thus, the factual record developed at this hearing disclosed that in Boyer's Northumberland county prosecution, like his Union County prosecution, Boyer's confession to state police was a major incriminating piece of evidence.  In both cases, that confession was subject to the same Miranda challenge since the confession was extracted from Boyer in a second interrogation which followed immediately on the heels of Boyer's apparent invocation of his right to remain silent.  Furthermore, in both cases, the Miranda issues presented by these successive interrogations in the face of an apparent invocation of the right to remain silent were never raised by trial counsel.  Finally, the testimony elicited at the hearing conducted by this Court revealed that there was no tactical or strategic reason for the failure to litigate this claim.  Rather, that failure was described by counsel as the human failing of an inexperienced lawyer; an oversight committed by a novice attorney who simply "did not think of that [the Miranda claim] at that time." (Id., p. 18.)

With this factual background developed at this hearing, the parties then briefed their respective positions regarding Boyer's claim of ineffective assistance of counsel. (Docs. 58 and 59.)  Thus, this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that the petitioner's petition for writ of habeas corpus be granted.

### III.   Discussion

#### A.   State Prisoner Habeas Relief–The Legal Standard, Ineffective Assistance of Counsel

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b)

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, a petition must satisfy exacting substantive standards to warrant relief.  Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.  See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension.  See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

These general principles apply with particular force to habeas petitions, like Boyer's, grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). "Under Strickland's first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth

Amendment.  Id.  Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Id.  "Counsel's reasonableness must be assessed on the facts of the particular case, viewed as of the time of counsel's conduct."  Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005).  However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable."  Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief.  Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors."  Id.  This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."  Id.  "This requires more than just a 'conceivable' likelihood of a different result. Harrington, 131 S.Ct. at 792.  However, a petitioner 'need not show that counsel's deficient performance "more likely than not altered the outcome of the case"—rather he must show only "a probability sufficient to undermine confidence in the outcome." ' Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir.2005) (quoting Strickland, 466 U.S. at 693–94, 104 S.Ct. 2052)."  Grant v.

Lockett, 709 F.3d 224, 235 (3d Cir. 2013).

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."'" Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006)(quoting Strickland, 466 U.S. at 696.). Therefore, the prejudice analysis compelled by Strickland specifically calls upon us to critically assess the strength of the government's case and whether the alleged ineffectiveness related to an important evidentiary matter since "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id.

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law are substantively consistent with the standard set forth in Strickland.  See Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000). Strickland's analytical paradigm for assessing challenges to the effectiveness of counsel applies to a host of trial counsel actions, including the failure to litigate Miranda claims in suppression motions.  Where such failures fail below an objective standard of reasonableness, and are prejudicial to a petitioner, that petitioner may be entitled to habeas corpus relief.  See Tice v. Johnson, 647 F.3d 87, 106 (4th Cir. 2011)("There is simply nothing we can discern from the record that would excuse the defense team's failure to move to suppress Tice's confession.  The error was of sufficient magnitude that we cannot help but conclude that counsel's performance in this singular instance was constitutionally deficient within the meaning of Strickland.")

As we consider the application of these principles to Boyer's case, we pause to examine another tenet which typically applies in this field. In the ordinary case, the merits of an ineffectiveness claim have been thoroughly evaluated by the state courts, and there is a coherent, consistently articulated rationale for counsel's action which has been adopted by the state courts.  Where a case has followed this typical litigation

path, 28 U.S.C. §2254(d) provides that habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2). Consistent with " the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," Knowles v. Mirzayance, 556 U.S. 111, 123 (2009), "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Id.

While this highly deferential standard of review applies in the typical case, this is not a typical case. Indeed, with respect to the specific Miranda issue which lies at the heart of this habeas corpus petition, the only controlling, precedential, substantive assessment of this issue by the state courts is found in the Superior Court opinion in Boyer's companion case, a ruling which found that Boyer was entitled to post-conviction relief on this Miranda claim. Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008). Despite our efforts to provide the state courts with an opportunity to reconcile these seemingly irreconcilable outcomes, those courts have declined to address the merits of this particular claim.

19

Therefore this task falls to us in a setting where the respondents may not avail themselves of the doubly deferential standard of review that typically accrues to their benefit in federal habeas corpus litigation.

    **B.**    **Boyer is Entitled to Habeas Corpus Relief In The Form of an Order Directing Substantive Assessment of His Miranda Claims**

Judged against these legal guideposts, we conclude that the substantive assessment made by the Pennsylvania Superior Court in Boyer's companion case was correct, Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008), and that Boyer should be entitled to limited post-conviction relief in the form of an order vacating this conviction and remanding this case for further assessment of Boyer's Miranda claim.

In assessing this particular ineffectiveness claim, we begin by observing that at the time of Boyer's Northumberland County prosecution the parameters of the Supreme Court's ruling in Miranda had been well-established for nearly 40 years. As the Supreme Court has long observed:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural

safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. *Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.* The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

Miranda v. Arizona, 384 U.S. 436, 444-45 (1966)(emphasis added).

Thus, under Miranda once a suspect invokes his right to remain silent by "indicat[ing] in any manner that he does not wish to be interrogated, the police may not question him." Id. The prohibition against further interrogation of a suspect who invokes his right to remain silent in an integral part of the holding in Miranda. As the Supreme Court subsequently observed;

A reasonable and faithful interpretation of the Miranda opinion must rest on the intention of the Court in that case to adopt "fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . ." 384 U.S., at 479, 86 S.Ct., at 1630. The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." Id., at 474, 86 S.Ct., at 1627. Through the exercise of his option to terminate questioning he

21

> can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his "right to cut off questioning" was "scrupulously honored."

Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

The consequences which flow from a failure to scrupulously honor an invocation of this right to remain silent were also well settled at the time of Boyer's state prosecution. When police fail to scrupulously honor an invocation of this right, suppression of evidence obtained in violation of a suspect's Miranda rights is required. See, e.g., United States v. Lafferty, 503 F.3d 293, 299 (3d Cir. 2007); United States v. Tyler, 164 F.3d 150, 153 (3d Cir. 1998).

Given these settled legal tenets, we find that the failure of trial counsel to even raise a Miranda claim in the context of this particular confession "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. On these facts, where Boyer was approached by one state trooper, stated that he did not wish to speak, and then was promptly interrogated by a second trooper, there is an apparent, but unaddressed question, regarding whether law enforcement fulfilled its duty under Miranda to scrupulously honor what may have been the invocation of a basic constitutional right. Given these facts, we are constrained to conclude that: "There

22

is simply nothing we can discern from the record that would excuse the defense []
failure to move to suppress [the] confession [on <u>Miranda</u> grounds]. The error was of
sufficient magnitude that we cannot help but conclude that counsel's performance in
this singular instance was constitutionally deficient within the meaning of
<u>Strickland</u>." <u>See</u> <u>Tice v. Johnson</u>, 647 F.3d 87, 106 (4th Cir. 2011), <u>see also</u>,
<u>Commonwealth v. Boyer</u>, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super.
Ct. 2008).

Nor can we embrace the " 'presumption' that counsel's performance was [a]
reasonable [tactical choice in this case]." <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir.
2005). That presumption cannot be applied here because Boyer's former state trial
counsel candidly acknowledged that there was no tactical or strategic reason for
foregoing this legal issue. Instead, Counsel forthrightly admitted that: "At the time,
I probably did not think of that [the <u>Miranda</u> claim] at that time. This case was,
actually I got it during the first year, within the first year of my employment with the
county. And to be honest with you, I didn't probably think of it at that time." (Doc.
54., pp. 18-19.)

Finding that the first element of a Strickland claim has been shown here since
the performance of counsel fell below an objective standard of reasonableness,
<u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 691-92 (1984), we consider whether

Boyer can establish the second element of a <u>Strickland</u> claim, a showing of prejudice. In this regard, the observations of the Pennsylvania Superior Court, the only state court to undertake a reasoned prejudice analysis of this issue, are particularly apt: "A confession is likely the most damaging evidence that can be offered against a defendant.  <u>Commonwealth v. Ardestani</u>, 558 Pa. 191, 736 A.2d 552, 557 (1999). More particularly, with respect to the instant matter, we agree with the trial court that Appellant's confession was the most powerful Commonwealth evidence admitted. In this vein, it is worth noting that the victims could not identify the burglars because the latter wore masks."  <u>Commonwealth v. Boyer</u>, 2008 PA Super 279, 962 A.2d 1213, 1218 (Pa. Super. Ct. 2008).

In short, in the absence of eyewitness identification the issue of Boyer's innocence or guilt on these charges hung on two threads: the statements of a co-defendant, corrupt source witness and Boyer's own confession.  A successful attack upon the confession would, therefore, have altered the quantum of proof in this case in ways which would have been profound and, in our judgment, would have created " 'a probability [of a different outcome] sufficient to undermine confidence in the outcome.' "  <u>Jacobs v. Horn</u>, 395 F.3d 92, 105 (3d Cir.2005) .

In an effort to avoid this result, the respondent has argued that we should find no constitutionally ineffective conduct here, and no prejudice to Boyer, because in

the respondent's view, Boyer's statement at the time of his interrogation that he did not wish to speak to the first interrogating trooper was not the invocation of a constitutional right.   Instead, it was merely an expression of an interpersonal preference for interrogation by another police officer.  On the basis of this thin reed, we are asked to discount the importance of counsel's failure to litigate this issue at trial.

There are at least three problems with this assertion.

First, regrettably, this claim was not fully and factually developed by the respondent and addressed by the state courts when we first remanded this matter to those courts in light of the Superior Court's precedential decision in Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218 (Pa. Super. Ct. 2008).  Instead of fully developing this contention and obtaining an explicit ruling on this issue from the state courts, a ruling that could have reconciled these seemingly irreconcilable state court decisions, Boyer's Northumberland County PCRA petition was disposed of on procedural grounds, leaving us bereft of any state court findings which would have fully supported this argument.

Second, this argument ignores the state court findings actually made in the precedential Superior Court opinion in Boyer's companion case, findings that cast grave doubt upon this contention.  Indeed, this contention which respondents urge us

to embrace was flatly rejected by the Superior Court which stated that: "Based on the record before us, we reject the PCRA court's notion that [Boyer's] refusal to speak with Trooper 1 was not an invocation of his right to remain silent or was somehow qualified to the extent that Trooper 2 need not have read [Boyer] his rights.   The simple fact is that [Boyer] was initially told he could refuse to speak and that is what he chose to do.   There is no record evidence, for example, that he told Trooper 1 he would be willing to speak if another trooper conducted the interview.   In sum, whatever [Boyer]'s subjective reasons, he exercised his rights and, almost immediately thereafter, was interrogated by Trooper 2."   Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218 (Pa. Super. Ct. 2008).

Finally, on this uncertain, equivocal and contradictory factual record, we find that respondent's invitation to treat Boyer's apparent invocation of a basic constitutional rights as an implied offer to undergo immediate interrogation by another police officer ignores the longstanding guiding principle that defines the Miranda doctrine.   "A reasonable and faithful interpretation of the Miranda opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .' 384 U.S., at 479, 86 S.Ct., at 1630.   The critical safeguard identified in the passage at issue is a person's 'right to cut off questioning.'

Id., at 474, 86 S.Ct., at 1627." Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).  In short, we are not prepared to state on this record, and in the face of a contrary decision by the Pennsylvania courts, that this conduct demonstrated that Boyer's " 'right to cut off questioning' was 'scrupulously honored.' " Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

Yet while we reach this conclusion, we also note, as did the Pennsylvania Superior Court, that "our ruling today is not to be taken as a pronouncement that there necessarily was a Miranda violation and that the confession must necessarily be suppressed pursuant to Miranda.  We do, however, find [Boyer] has convinced us that there is arguable merit to a Miranda claim based on the testimony as it now stands and that counsel was ineffective.  [Boyer should be] free to seek suppression of his confession pursuant to Miranda on remand."  Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008).[3]

### III.   Recommendation

For the foregoing reasons it is recommended that the petition for writ of habeas corpus be granted, and this matter be remanded to the Court of Common Pleas for

---

[3]Because we find that this issue, standing alone,  compels a remand for further proceedings, we have not addressed Boyer's concerns regarding the failure to propose certain jury instructions or object to the introduction of evidence, matters that are typically governed by state law and practice.

further proceedings consistent with this Report and Recommendation and the

mandate of the Pennsylvania Superior Court in the companion case of

Commonwealth v. Boyer, 2008 PA Super 279, 962 A.2d 1213, 1218-19 (Pa. Super.

Ct. 2008).

> The parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of April, 2014.

> ***S/Martin C. Carlson***
> Martin C. Carlson
> United States Magistrate Judge